**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TERRY DARNELL EDWARDS** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION No.  3:10-CV-6-M** |
| | § | |
| **WILLIAM STEPHENS, Director** | § | **(Death Penalty Case)** |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division** | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the application for a writ of habeas corpus filed by Terry Darnell

Edwards (Edwards) pursuant to 28 U.S.C. § 2254.  Based on the relevant filings and applicable

law, the application is **DENIED**.

**I.  BACKGROUND**

Edwards was convicted of capital murder and sentenced to death in November 2003.  His

conviction and sentence were affirmed on direct appeal on March 1, 2006.  *Edwards v. State*, No.

AP 74,844, 2006 WL 475783 (Tex. Crim. App. 2006).  He filed an application for a post-

conviction writ of habeas corpus on November 3, 2005, that was denied by the Texas Court of

Criminal Appeals ("CCA") on December 16, 2009.  *Ex parte Edwards*, No. WR-73027-01, 2009

WL 4932198 (Tex. Crim. App. 2009).  The CCA's opinion on direct appeal summarized

Edwards' involvement in the murder of two people during a robbery at his former workplace as

follows:

> On the morning of July 8, 2002, [Edwards] and another man robbed and killed
> two clerks at a Dallas Subway sandwich shop.  Both victims were shot in the head
> from only inches away.  [Edwards] later gave a statement in which he admitted
> being inside the sandwich shop but claimed that the other man, "T-Bone," did the
> shooting. [Edwards] acknowledged having the money stolen from the store and

the gun used to kill the victims, but claimed that "T-Bone" gave him the gun when they left the store.  [Edwards] had worked at that particular Subway some months earlier, but he had been fired when it appeared that he had been stealing money from the register. [Edwards] had previously been fired from another Subway shop for misappropriating store funds under his control.

*Edwards v. State*, 2006 WL 475783, at *1.  Through appointed counsel, Edwards filed a federal petition for writ of habeas corpus ("Pet.", doc. 6) on December 15, 2010.  The respondent filed an answer ("Ans.", doc. 18), and Edwards filed his reply (Reply, doc. 21).

## II.  GROUNDS FOR RELIEF

Edwards presents the following six grounds for relief pertaining to jury selection issues:

1.  The trial court's denial of Edwards's motion to quash a panel of venirepersons that included James Redden deprived him of a fair and impartial jury (Pet. at 30-34).

2.  The trial court's grant of the State's challenge for cause of prospective juror Cecelia Hurley[1] deprived Edwards of a fair and impartial jury (Pet. at 35-39).

3.  The trial court's grant of the State's challenge for cause of prospective juror Byron Keith Tatum[2] deprived Edwards of a fair and impartial jury (Pet. at 35-39).

4. The trial counsel's failure to challenge the Dallas County venire selection process as violating Edwards's right to a jury consisting of a fair cross section of the community constituted ineffective assistance of counsel (Pet. at 39-47).

5.  The trial court's denial of Edward's challenges for cause of prospective jurors Bobby Jack Sims and Edward Hernandez deprived him of a fair and impartial jury (Pet. at 47-49).

6. The failure of Edwards's counsel on direct appeal to raise any claims regarding the improper denial of Edwards's challenges for cause of Sims and Hernandez constituted ineffective assistance (Pet. at 50).

---

[1]The parties' spelling of this name as "Cecilia" in their pleadings differs from the spelling in the state court record, which is used herein.  (Vol. 34 of the State Reporter's Record ("RR") at 9); *see also Edwards v. State*, 2006 WL 475783, at *2.

[2]The parties' pleadings identified this potential juror as "Keith Tatum", but the state court record identifies him as "Byron Keith Tatum" or "Byron Tatum."  (42 RR at 28); *see also Edwards v. State*, 2006 WL 475783, at *2.

The respondent contends that Edwards' first claim is procedurally barred (Ans. at 14-15), that his fifth and sixth claims are unexhausted and now procedurally barred (Ans. at 8-11), and that all of his claims lack merit.

### III.  STANDARD OF REVIEW

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  It sets forth a number of preliminary requirements that must be satisfied before reaching the merits of a claim.

Under AEDPA, a federal court may not grant habeas relief on any claim that the state prisoner has not first exhausted in the State corrective process available to protect his rights.  *See* 28 U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011).  However, the federal court may deny relief on the merits notwithstanding any failure to exhaust.  *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005).

If the state court denies the claim on state procedural grounds, a federal court will not reach the merits of those claims if it determines that the state-law grounds are independent of the federal claim and adequate to bar federal review.  *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  However, if the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows that an exception to the bar applies, the federal court must resolve the claim without the deference AEDPA otherwise requires.  *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is de novo when there has been no clear adjudication on the merits.") (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir.1997)); *Mercadel v. Cain*, 179 F.3d 271, 274-275 (5th Cir.1999) ("the AEDPA deference scheme outlined in 28 U.S.C. §

3

2254(d) does not apply" to claims not adjudicated on the merits by the state court).

If the state court denies the claim on the merits, a federal court may not grant relief unless

it first determines that the claim was unreasonably adjudicated, as defined in § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In the context of the § 2254(d) analysis, "adjudicated on the merits" is a term of art referring

to a state court's disposition of a case on substantive rather than procedural grounds. *Green v.*

*Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). This provision restricts a court's power to grant

relief to state prisoners by barring claims in federal court that were not first unreasonably denied

by the state courts. It limits, rather than expands, the availability of habeas relief. *See Fry v.*

*Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "By its terms §

2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to

the exceptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 131 S.Ct. at 784. "This is a 'difficult to

meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that

state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011) (internal citations omitted) (quoting *Richter*, 131 S.Ct. at 786, and *Woodford v.*

*Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

4

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from that court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review if the state court either unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. The standard for determining whether a state court's application was unreasonable is an objective one and applies to all federal habeas corpus petitions filed after April 24, 1996, provided that the claims were adjudicated on the merits in state court. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before the state court first satisfies § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 131 S.Ct. at 1400. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In the event the state court adjudication is deemed unreasonable, the federal court must

5

still determine whether habeas relief would otherwise be appropriate. "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953-954 (2007). In those rare cases when a state prisoner makes the difficult showing required under § 2254(d), then the federal court must make its own independent determination of whether habeas relief is appropriate, and conduct whatever hearings and evidentiary development are necessary to properly make that determination. *See, e.g., Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013) (holding that district court did not err in conducting the evidentiary hearing upon which habeas relief was granted) *cert. denied,* 134 S. Ct. 134 (2013); *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010) ("when a petitioner makes a prima facie showing of mental retardation, a state court's failure to provide him with an opportunity to develop his claim deprives the state court decision of the deference ordinarily due under the AEDPA"); *Hayes v. Thaler*, 361 Fed.Appx. 563, 566 (5th Cir. 2010) (applying *Panetti* standard in review of a *Batson* jury selection habeas claim).

## IV.  DENIAL OF MOTION TO QUASH

Edwards first complains that the trial court denied him his Sixth Amendment right to a fair and impartial jury when it denied his motion to quash a panel of three potential jurors that included James Redden ("Redden"), whom it had allegedly improperly instructed that "'mitigation' was a 'justifying' or 'extenuating' circumstance for the offense." (Pet. at 30.)

## A.  <u>State Court Proceedings</u>

During the jury selection stage, the trial court conducted individual voir dire each day

following general instructions to a panel of the jurors to be examined that day.  On August 21,

2003, the trial court provided the challenged instructions to a panel of three venirepersons:

Caplinger, Warrick, and Redden.  Regarding the third special issue covering mitigating

circumstances, the trial court provided a general explanation and examples.  It described this as a

safety net to undo the answers to the first two special issues.  (7 RR at 23.)  The court also

explained that while there is "no laundry list of factors that would be considered sufficiently

mitigating, that is for each one of you to decide for yourselves" (7 RR at 25-26). The court

characterized mitigation in different ways: first as "extenuating circumstance or a justifying

circumstance" (7 RR at 23), and later as "acts of kindness, [being] good maybe to certain people"

(7 RR at 24), "positive things" such as "that he was a college graduate from Harvard, that he won

the Congressional Medal of Honor in the war" (7 RR at 26), and bad things in his life such as

> evidence that maybe he was physically or sexually abused in childhood.  He was
> abandon (sic) by his parents in childhood, grew up on the streets by himself.  He's
> drug or alcohol addicted or that he has a history of depression or of mental illness.
> He has a history of some mental illness, that he has physical disabilities.

(7 RR at 26.)  The trial court concluded this list of examples by saying that there is an "unlimited

number of them.  Each one of you has to decide for yourself based on everything else we've

decided should this individual be spared."  (7 RR at 26.)

Following the trial court's general instructions to this panel, Edwards' trial counsel

objected, asking that these potential jurors be disqualified because of the trial court's voir dire

regarding the discussion of "society" in the future dangerousness special issue (7 RR at 32-33),

and also regarding the discussion of the mitigation special issue.

> DEF. COUNSEL:    In regard to special issue No. 3, the Court stated that
> mitigation was a justification for the activity of the

7

> Defendant.  And I don't believe that there's any basis for
> that definition or for that to be implied.  I think, if anything,
> it's completely separate and apart from his activity to a
> great extent, other than in first portion there, taking into
> consideration all the evidence.

(7 RR at 33.)  The trial court overruled this objection.  Subsequently, Caplinger and Warrick were excused by agreement.  (7 RR at 35, 88.)

Redden was extensively examined by the parties regarding the third special issue, including his views on mitigating evidence and psychological experts.  The attorneys explained to Redden that mitigating evidence could include "the Defendant's character and background," "personal moral culpability of the Defendant," "mental illness," "birth defect," "slightly mentally retarded" (7 RR at 124-26), drug and alcohol abuse (7 RR at 161-62).  Redden was told that he could "pick whatever you want" to consider as mitigating or not, that he was given a "free hand, very subjective."  (7 RR at 126.)

After Redden was specifically questioned regarding his answers to the jury questionnaire where he explained that he would not consider the circumstances of birth, upbringing and environment during punishment, he acknowledged that those categories of evidence were within the scope of what he could consider as mitigating evidence under the law.[3]  (7 RR at 131.) Redden later persisted in the view that he did not personally consider a person's background to be a mitigating circumstance.  (7 RR at 168.)

---

[3]Redden testified:

REDDEN:   Well, the way I look at it, even though I don't necessarily agree with it, if the, the law, obviously says that you're supposed to consider these things or it wouldn't be on that chart.

PROSECUTOR: That's right.

REDDEN:   So I would be obligated to do that faithfully.

Redden was also extensively examined regarding his views on the testimony of mental health experts.  He said that he "would not necessarily believe a psychologist or psychiatrist in terms of mitigation, unless I was instructed that by law I needed to do that, but again, I would keep an open mind."  (7 RR at 104-05.)  He would not cut it off before he heard it, but he had "some basic questions about the validity of what a psychologist or psychiatrist might conclude." (7 RR at 105.)  He did not believe that they based "their conclusions on scientific evidence," but rather, on their opinions.  (7 RR at 144.)  He attributed the breakdown of family and authority to the views of psychiatrists and psychologists (7 RR at 145), but affirmed that he could consider their opinions in an individual case, such as this one.  (7 RR at 148, 167.)

Redden also shared his own experience with mental health professionals in connection with his sons' drug and criminal problems, and one son's inability to care for himself.  (7 RR at 145, 157-61.)  Redden expressed concerns about how drug abuse can burn the mind (7 RR at 159-64),  and how he would be hesitant to answer questions in such a way as to release a person that had become dangerous because of drug abuse back into society.  (7 RR at 163.)  Edwards's trial counsel expressly made no challenge for cause of Redden, but instead exercised a peremptory challenge to remove him from the jury.  (7 RR at 169.)

In his direct appeal to the CCA, Edwards complained that the trial court erred when it denied his motion to quash the panel of jurors "which included prospective juror James Redden because the trial court instructed the jury panel that 'mitigation' was a 'justifying' or 'extenuating' circumstance for the offense."  (Appellant's Brief, "App. Br.," at 23-24.)  Edwards claimed that he "was forced to expend a peremptory strike on Mr. Redden, which could have been used on . . . Bobby Jack Sims, who was an unacceptable juror to the defense . . . ."  (App.

Br. at 28.)  Edwards did not provide any explanation regarding how or why Sims was "unacceptable" and did not mention Hernandez at all.

The CCA noted Edwards's argument that he was harmed by this instruction because he was subsequently forced to exercise a peremptory challenge to excuse Redden.  It denied the claim on state procedural grounds, finding that "because the record reflects that appellant received an extra peremptory challenge in addition to the fifteen he was granted by statute, appellant cannot demonstrate here that he suffered a detriment from the loss of the strike he used on Redden." *Edwards v. State*, 2006 WL 475783, at *2 (citing *Sells v. State*, 121 S.W.3d 748, 758 (Tex. Crim. App. 2003)[4] and *Feldman v. State*, 71 S.W.3d 738, 743-45 (Tex. Crim. App. 2002) (when record showed that defendant "received an extra peremptory challenge in addition to the fifteen he was granted by statute, [defendant] can only demonstrate harm by showing that ***at least two*** of the complained-of challenges were erroneously denied.") (emphasis in original), *superseded by statute on other grounds*, TEX. CODE CRIM. PROC. CODE ANN. art. 37.071 (West 2009), *as recognized in Coleman v. State*, 2009 WL 4696064 (Tex. Crim. App. 2009))).

## B.  **Procedural Bar**

Edwards argues that the state court's adjudication of his first claim constitutes an

---

[4]In *Sells*, the CCA set forth the state procedural requirements as follows:

To preserve error on denied challenges for cause, an appellant must demonstrate on the record that: 1) he asserted a clear and specific challenge for cause; 2) he used a peremptory challenge on the complained-of venireperson; 3) all his peremptory challenges were exhausted; 4) his request for additional strikes was denied; and 5) an objectionable juror sat on the jury.

121 S.W.3d at 758.  Edwards also could not satisfy this standard because he expressly did not make any challenge for cause of Redden.  (7 RR at 169.)

unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2)[5] because it incorrectly

found that he had not shown harm from his exercise of a peremptory challenge after he had been

granted an additional peremptory challenge because two unacceptable jurors actually served.

(Pet. at 34.)[6]  The respondent notes that the CCA denied this claim on a state procedural ground.

(Ans. at 14-15.)

The CCA denied this claim because Edwards had not made the required showing to

preserve error following the trial court's grant of an additional peremptory strike in accordance

with state procedural requirements.  *Edwards v. State*, 2006 WL 475783, at *2.  This is a state

law ground that is independent of the federal claim and adequate to bar federal review.  *See Perez

v. Quarterman*, No. A-09-CA-081 LY, 2011 WL 6959946, at *22-*23 (W.D. Tex. Dec. 29,

2011); *Caldwell v. Thaler*, 770 F. Supp. 2d 849, 869 (S.D. Tex. 2011) (citing *Berkley v.

Quarterman*, 310 Fed.Appx. 665, 667–68 (5th Cir.2009) and *Noltie v. Peterson*, 9 F.3d 802,

804–05 (9th Cir.1993)).  This Court may therefore not reach the merits.  *See Sawyer v. Whitley*,

505 U.S. at 338; *Coleman v. Thompson*, 501 U.S. at 735.  This claim is **DISMISSED** as

---

[5]The standard set out in § 2254(d)(2) applies only to claims that were adjudicated "on the merits" by the state court, not to those adjudicated based on state procedure.  *See Green v. Johnson*, 116 F.3d at 1121.

[6]This claim differs factually from the one Edwards presented to the state court.  There, he claimed that the trial court's denial of his motion to quash harmed him because he was then required to exercise a peremptory challenge that he could have used on Sims, "who was an unacceptable juror to the defense", but he did not explain how Sims was unacceptable.  (App. Br. at 28).  He also did not mention Hernandez.  Here, he alleges that Sims "expressed a view that the presence of a weapon or the use of a weapon during a crime to him indicated anticipation on the part of the Defendant."  (Pet. at 32 (quoting 47 RR at 99-100).)  He also claims that he was prevented from exercising a peremptory strike to excuse another "unacceptable" juror, Hernandez.  (Pet. at 32 (citing 50 RR at 75-77).)  Claims advanced in federal court based on legal or factual theories not presented to the state court are not properly exhausted.  *See Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001).  The respondent does not clearly argue that Edwards' first claim is a materially altered claim that has not been exhausted.  He only generally argues that the claims involving Sims and Hernandez are procedurally barred.  (Ans. at 16.)  Courts may not grant relief on an unexhausted claim.  *See* 28 U.S.C. § 2254(b)(1).  As discussed, it is not necessary to raise or address exhaustion *sua sponte* because Edward's first claim is otherwise procedurally barred and lacks merit.  *See* 28 U.S.C. § 2254(b)(2).

procedurally barred due to the state court's disposition on procedural grounds.

## C. Merits

To the extent that Edwards' first claim is not procedurally barred, it lacks merit.  The record shows that the trial court's instructions were not improper, that Redden was not mislead about the meaning of mitigating evidence, and that Edwards did not even challenge Redden for cause before exercising a peremptory challenge.

Even assuming that the trial court's instructions were deficient, any deficiency in the way the trial court once described mitigating evidence was adequately corrected during the voir dire.  The instructions provided by the trial court, taken as a whole, did not limit Redden's consideration of mitigating evidence to "justifying" or "extenuating" circumstances of the offense.  Instead, the trial court emphasized that there was no "laundry list" of mitigating factors but an "unlimited" number of them, and merely included these circumstances among many examples provided, including background and "classic" mitigating evidence.  In addition, Redden was extensively examined by both parties on the issue and expressed an understanding that the law did not require him to limit his view to "justifying or extenuating circumstances of the offense."  Redden was not subject to challenge due to improper voir dire instructions.

Further, Redden did not sit on the jury, and the forced use of state peremptory challenges to remove an unacceptable potential juror does not form a constitutional basis for federal habeas relief.  "Any claim that the jury was not impartial, therefore, must focus not on [the excused venireperson], but on the jurors who ultimately sat."  *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988).

> Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error.  But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.

> We have long recognized that peremptory challenges are not of constitutional dimension. *Gray*, supra, at 663, 107 S.Ct., at 2054; *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919). They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. *See Hopt v. Utah*, 120 U.S. 430, 436, 7 S.Ct. 614, 616, 30 L.Ed. 708 (1887); *Spies v. Illinois*, 123 U.S. 131, 8 S.Ct. 21, 22, 31 L.Ed. 80 (1887). We conclude that no violation of petitioner's right to an impartial jury occurred.

*Id.* at 88 (footnote omitted). Even assuming that Redden was improperly instructed, that he was subject to a challenge for cause, that one had been exercised and denied, and that the denial forced Edwards to use his last peremptory challenge, Edwards would not still be entitled to federal habeas relief. Edwards' first claim is alternatively **DENIED** for lack of merit.

## V.  DENIAL OF CHALLENGES TO POTENTIAL JURORS

In his fifth claim, Edwards asserts that he was denied his Sixth Amendment right when the trial court denied his challenges for cause of two potential jurors, Bobby Jack Sims ("Sims") and Edward Hernandez ("Hernandez"). (Pet. at 47.)[7] In his sixth claim, Edwards complains that his appellate counsel was ineffective for failing to raise the substance of his fifth claim in his direct appeal. (Pet. at 50.) The respondent contends that these claims are unexhausted and now procedurally barred. (Ans. at 8-11.) Edwards acknowledges that he did not present these claims to the state court.[8] (Pet. at 47, 50.)

## A. <u>Exhaustion</u>

---

[7]In his Reply, Edwards stresses that the nature of this claim is a complaint that the jury was not impartial because of Sims and Hernandez. (Reply at 1-2.)

[8]Edwards moved to stay and abate these proceedings in order to exhaust these claims. (*See* doc. 9.) He did not object to the recommendation that his motion be denied for failure to show good cause or potential merit (*see* doc. 12), and the recommendation was accepted (*see* doc. 15).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5 (West 2011).  This is a codification of the judicially created Texas abuse-of-the-writ doctrine.  *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000).  Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable, or shows that no rational juror would have found for the State but for a violation of the United States Constitution.  *See id.* at 758 n.9.  Unexhausted claims for which a petitioner could not make this showing would be considered procedurally barred from review on the merits unless an exception is shown.  *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).  An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Because the state court would now find these claims to be procedurally barred, they are procedurally barred from federal habeas review.  (Findings & Rec. to Deny Stay, doc. 12, at 4; Order adopting, doc. 15.)  Edwards asserts no exception to the imposition of a procedural bar.  His fifth and sixth claims are therefore **DISMISSED** as procedurally barred.

**B.  Fifth Claim**

Edwards' claim that the trial court denied his challenges for cause of Sims and Hernandez is also subject to denial on the merits.

*1. State Court Proceedings*

On October 30, 2003, the trial court conducted the voir dire examination of Sims.  During

14

the discussion of Special Issue No. 2 (requiring the state to prove that an accomplice anticipated that a human life would be taken), Sims expressed the view that if multiple people carry guns to rob someone, they would all anticipate that someone could be shot.  (47 RR at 57, 87-88, 93.) Sims agreed to look at the facts of the individual case and not have a predetermined idea about how he was going to answer the question.  (47 RR at 58.)  Sims also agreed to hold the State to its burden to prove beyond any reasonable doubt that an accomplice anticipated that a human life would be taken in answering that special issue.  (47 RR at 89-90.)  Sims later clarified for the trial court that his opinion would depend on which accomplices had guns.[9]  (47 RR at 94.) Edwards challenged Sims for cause based on his answers regarding Special Issue No. 2, "in that he expressed a view that the presence of a weapon or the use of a weapon during a crime to him indicated anticipation on the part of the Defendant.  Because of that, we would state that he's unacceptable and should be excused for cause."  (47 RR at 99-100.)  The court denied the challenge and refused a request for another peremptory challenge to strike Sims.  (47 RR at 100.)

On November 4, 2003, the trial court conducted the voir dire examination of Hernandez. (50 RR at 7-75.)  Defense counsel examined Hernandez regarding parole law and the amount of time that an inmate serving a life sentence for capital murder would be required to serve, and

---

[9] The following exchange took place:

THE COURT:     Let me give you a case where three people go in to commit a robbery, and only one of them has a gun.  The other two don't have guns.  Do you think the two that did not have guns anticipated that a human life would be taken?

SIMS:          Not necessarily.

Hernandez responded that he would consider a life sentence, whether it was 40 years or full life.[10]

(50 RR at 57-58.)

Hernandez was also examined regarding the meaning of "probability" in the first special

issue.  He agreed with the prosecutor's explanation that "probability" meant "more likely than

not" or more than a 50% chance.[11]  (50 RR at 30-31.)  When defense counsel addressed the first

---

[10]D. COUNSEL:   So in that life sentence, *that life sentence consists of a 40 calendar year sentence*.  In other words the defendant would have to serve at a very minimum 40 calendar years day-for-day with no good time credit.  No, no nothing.  In other words he's there 40 years no matter what he does.  He can go to prison and find a cure for cancer, bring peace to the Middle East.  Do whatever and he will be in prison no less than 40 years.

The law states that he has to be in prison for 40 years before he ever becomes eligible for parole, that doesn't mean 40 years one day he gets out of prison.  Only at that point in time that somebody gets up from their desk, goes over and opens up a parole file for him.  And while Texas doesn't have life without parole, *the Judge's instructions to you tell you that you have to consider that life sentence to mean life*.

In other words, *you have to (sic) kind of odd, we can tell you it's 40 calendar years, but then the Judge's instructions to you won't say that.*  They'll say you should consider a life sentence to mean exactly that, that he will die in prison.

Do you understand that?

HERNANDEZ:   (Witness nods head up and down.)  You've told me a lot of things.  *I'm not sure what you're asking me to understand*, but if you're asking will I consider, would I consider a life sentence, yes, I would.

D. COUNSEL:   Okay.  Would you consider a life sentence to mean life?

HERNANDEZ:   Once again, you've just told me it's going to be 40 years.

D. COUNSEL:   Well, no, it's going to be no less than 40 years.  It can never be less than 40.

HERNANDEZ:   I would consider whether it's 40 years or his full life, I would consider those, yes.

[11]Hernandez responded to the prosecutor as follows:

PROSECUTOR:   All right. Probability.  I can tell you a little bit about what the law says there.  Just says it's a likelihood.  More likely than not.  We know it doesn't say possibility, whether there's a possibility.  Well, that wouldn't be fair.  That would always be yes.  See the difference?

HERNANDEZ:   Sure.

special issue, he was interrupted multiple times by objections that were sustained.  (50 RR at 61-63.)  He then criticized the explanation that "probability" meant more than 50% because that did not add enough certainty to the State's required showing.  (50 RR at 63-64.)  Defense counsel asked whether Hernandez would attach a higher number, and Hernandez responded that it sounded like a reasonable number.[12]  (50 RR at 64.)

Defense counsel challenged Hernandez for cause for two reasons:

| | |
|---|---|
| D. COUNSEL: | Regarding his consideration of parole, even after being instructed, the juror did say that he would, in fact, consider that in assessing punishment. |
| | Also, point two, regarding his definition of probability.  We feel that his answers did not really comply with the requirements of law as to what probability actually is.  It would seem that he would indicate that just a chance, or possibility, would be enough for him to answer that |

---

| | |
|---|---|
| PROSECUTOR: | More likely than not.  We know it's not fifty fifty, that's a chance.  We know it's over 50%.  More likely than not.  You don't have to put any type of percentage on that.  You know, 70, 80, 51%, just more likely than not.  It doesn't say whether there is a high probability.  See that?  Doesn't say a substantial probability. |
| HERNANDEZ: | m-hum. |
| PROSECUTOR: | Doesn't say certainty.  Obviously, I don't think we can ever prove a certainty.  Does that make sense to you? |
| HERNANDEZ: | Yes, sir. |

[12] The following exchange occurred:

| | |
|---|---|
| D. COUNSEL: | Would you attach a higher number than 50% to the word probability?  You have to, as the law would tell you you have to, but in your own mind would you attach at least 51% to it or greater than 50%? |
| HERNANDEZ: | I don't know that.  I haven't thought of assigning that word a number in the past. |
| D. COUNSEL: | Well -- |
| HERNANDEZ: | I think you gentlemen have told me it's more than 50% today.  That sounds like a reasonable number, more than 50%. |

question, and the law requires probability.

(50 RR at 76.)  The trial court denied the challenge and refused the request for an additional peremptory challenge to exclude the juror.  (50 RR at 76.)

### 2. Merits

Edwards claims that Sims was unacceptable because of his views on whether the presence of a weapon during a crime would indicate anticipation.  (Pet. at 32 (citing 47 CR 99-100).)  He does not explain why Hernandez was unacceptable, but he quotes his complaint in the state court record that this juror "would never be fair to the Defendant."  (Pet. at 32 (quoting 50 RR at 76-77).)

Neither of the prospective jurors was subject to a challenge for cause as in Edwards's objections during the voir dire proceedings.  Sims did not hold a view that if any weapon was used by any party, that all accomplices were thereby shown to have anticipated that a human life would be taken.  Hernandez did not consider "probability" to include any possibility that an accused would be a future danger to society under the first special issue, but would require more than a 50% chance.  Both of these claims would properly have been denied by the CCA if they had been presented.  To the extent Edwards' fifth claim is not procedurally barred, it is **DENIED** for lack of merit.

## C.  Sixth Claim

In his sixth claim, Edwards complains that appellate counsel was ineffective for failing to raise the substance of his fifth claim on appeal.  (Pet. at 50.)

Claims of ineffective assistance of counsel are measured by the familiar two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  The first prong of *Strickland*

requires the defendant to show that counsel's performance was deficient. *See Strickland*, 466 U.S. at 687. The second prong requires the defendant to show prejudice resulting from counsel's deficient performance. *Id.* at 694. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697, 700.

Criminal defendants have a constitutional right to effective assistance of counsel in their first appeal. *See Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963). A claim of ineffective assistance of appellate counsel for failing to present an issue on appeal is governed by the *Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

> [The petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Id.* at 285 (internal citations omitted).

Here, a judgment of conviction and sentence of death was signed by the 195th Judicial District Court of Dallas County, Texas, on November 21, 2003. (CR at 250-52.) On that same day, the trial court signed an order appointing counsel to represent Edwards on appeal. (CR at 254.) Counsel filed his brief in the CCA on December 23, 2004, raising thirteen points of error and requesting oral argument. (App. Br. at 1, 23-107.) The brief did not raise the substance of Edwards' fifth claim.

As discussed above, Edwards's fifth claim lacks merit, and the CCA would properly have denied it if it had been raised on direct appeal. Edwards has not presented nonfrivolous claims

that his appellate counsel failed to present.  Therefore, he has not shown that his appellate

counsel's conduct was deficient.  *See Smith*, 528 U.S. at 285.  Because the outcome of the direct

appeal would not have changed if his appellate counsel had presented the claim, Edwards has

also not shown prejudice.  *Id.*  He has not satisfied either prong of the *Strickland* standard.  If this

claim is not unexhausted and procedurally barred, it is **DENIED** for lack of merit.

## VI.  GRANT OF CHALLENGES TO POTENTIAL JURORS

In his second and third claims, Edwards complains that the trial court denied him his

Sixth Amendment right to a fair and impartial jury by granting the State's challenges for cause of

potential jurors Cecelia Hurley ("Hurley") and Byron Keith Tatum ("Tatum").  (Pet. at 35.)

### A.  State Court Proceedings

The trial court granted the prosecutor's challenges for cause against Hurley and Tatum

due to concerns with their testimony.  Hurley testified that she would tend to trust, believe, and

give more credence to the testimony of Dallas police officers.[13]  (34 RR at 12, 41-43, 47, 49.)

---

[13]Hurley testified:

> My father was a police officer, a Dallas police officer.  He passed away in August of this year, and just being raised, I think, as a daughter and his beliefs probably portrayed over to me in that the justice system is fair.  I just probably always have admired the Dallas Police.  I believe that whatever, what they have to say is valid and I'm just the type of person that's probably, whatever the Dallas police officer, you know, has, you know, information they give to me in the trial, would be something that I would think is the most important.

(34 RR at 12.)

> A police officer, that is their job.  That is what they have been hired to do, you know, is their honesty and what they, you know.  The information they give for this decision should be weighed heavily in my, you know, as far as, as the crime that was committed.  The information they give regarding that.  I don't know, I feel like maybe as raised with as a police officer's daughter, you know, I trust in them and believe in what their testimony is.

(34 RR at 41-42.)  She testified that she would give more weight to the testimony of the police officer (34 RR at 43), and a higher degree of credibility.  (34 RR at 45.)  Throughout the voir dire examination, Hurley remained steadfast about this.  (34 RR at 47, 49.)

Tatum testified that he would hold the prosecution to a higher burden of proof than beyond a reasonable doubt.[14]  (42 RR at 36.)  He also testified that he would not consider the minimum range of punishment in the event the defendant was found guilty of the lesser offense of murder.[15]  (42 RR at 62.)  Edwards' trial counsel asked no questions to rehabilitate Tatum.  (42 RR at 67.)

Before the CCA, Edwards argued that the procedure in Art. 35.16(b)(3) of the Texas Code of Criminal Procedure, which requires that the law be explained and that venirepersons be asked whether they could follow that law regardless of their personal views, had not been followed.  (App. Br. at 28-40.)  He acknowledged that *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998) ("[o]nly in very limited circumstances, when a juror is erroneously excluded because of general opposition to the death penalty . . . does the exclusion of a juror by an unintentional mistake amount to a constitutional violation"), was controlling, and asked the CCA to overrule its holding in that case.  (App. Br. at 44-45.)

---

[14]The following exchange occurred:

PROSECUTOR:  Okay.  You recognize what the law says, beyond a reasonable doubt, but you're just telling us in your heart you're going to look past that.  You're going to require more than that.

TATUM:  In my heart I would have to be one hundred percent sure.

(42 RR at 36.)

[15]Tatum testified:

Honestly, I don't think five years is enough, I don't think, for an intentional murder.

\* \* \*

I mean, I don't think the person, if you take a life, you know, I mean, drawing the line between a death sentence and life sentence is one thing, but saying you can take a life and get, go free in five years, five or ten years, that's (sic) doesn't make sense to me, not enough.

(42 RR at 62.)

21

The CCA denied Edwards' claims, finding he had not presented errors of a constitutional dimension, and as a matter of state law, he had not shown that he was deprived of a lawfully constituted jury.[16]   *Edwards v. State*, 2006 WL 475783, at *2 (citing *Jones*, 982 S.W.2d at 391, 394, and *Murphy v. State*, 112 S.W.3d 592, 598 (Tex. Crim. App. 2003)).

## B.  Merits

Edwards acknowledges that the CCA denied his claims based on state law but argues that it incorrectly relied on that law, citing federal cases prohibiting the exclusion of jurors based on their conscientious scruples against the death penalty and requiring the exclusion of jurors that would automatically impose the death penalty for capital murder.  (Reply at 4-5 (citing *Morgan v. Illinois*, 504 U.S. 719 (1992), *Gray v. Mississippi*, 481 U.S. 648, 659 (1987), and *Marion v. Beto*, 434 F.2d 29 (1970)).)  Neither Hurley nor Tatum were excluded based on their views regarding the death penalty, however.[17]

The Sixth Amendment protects the right to a fair trial before an impartial jury.  As discussed, this requires a focus on the jurors "who ultimately sat" on the petitioner's jury, not on those who were excused.  *Ross*, 487 U.S. at 86.  The Fifth Circuit has refused to grant habeas relief to a state prisoner, even when it was undisputed that the trial court erred in granting a prosecutor's challenge for cause:

> Following *Ross*, and [*United States v. Prati*, 861 F.2d 82 (5th Cir. 1988)], our review of [the state prisoner's] Sixth Amendment claim is limited to whether the jurors that actually sat were impartial.  [The state prisoner] challenges the erroneous **exclusion** of an impartial juror rather than the erroneous **inclusion** of a

---

[16]Although this claim appears to have been adjudicated on state law grounds, the respondent has not asserted that adjudication as a defense, and it is not considered.

[17]Nor did he present that argument to the state court, where he characterized these venirepersons as "thoughtful prospective jurors who favored the death penalty."  (App. Br. at 43.)

> partial juror, and nowhere does he suggest that the actual jury that determined his
> guilt and penalty was not impartial.  We thus hold that the state court's
> adjudication that Jones's conviction should not be reversed pursuant to the Sixth
> Amendment was not an objectively unreasonable application of clearly
> established federal law.

*Jones v. Dretke*, 375 F.3d 352, 356-57 (5th Cir. 2004) (emphasis in original).[18]  Edwards has not

shown that the trial court's exclusion of Hurley and Tatum violated the Constitution, or that "the

actual jury that determined his guilt and penalty was not impartial."  *See Jones*, 375 F.3d at

356-57.  He has not shown the state court's adjudication to be incorrect, unreasonable or contrary

to clearly established federal law.

Nor has Edwards overcome the presumption in favor of the trial court's determination to

grant the State's challenges to Hurley and Tatum.  The Supreme Court reaffirmed the deference

owed to the trial court in *Uttecht v. Brown*, 551 U.S. 1 (2007).  Even when there is ambiguity in

either the questions to a prospective juror or the juror's answers,

> [d]eference to the trial court is appropriate because it is in a position to assess the
> demeanor of the venire, and of the individuals who compose it, a factor of critical
> importance in assessing the attitude and qualifications of potential jurors.  Leading
> treatises in the area make much of nonverbal communication.

*Id.* at 7-8, 9 (citing *Wainwright v. Witt*, 469 U.S. 412, 434 (1985) and *Darden v. Wainwright*, 477

U.S. 168, 178 (1986)).  Based on Hurley's stated bias in favor of the police and Tatum's

testimony regarding the burden of proof and potential sentences, the record supports the trial

court's determination, and its determination is entitled to deference.  Edwards has not shown that

---

[18]The Supreme Court recognizes a narrow exception to this general rule concerning potential jurors that were excluded on motion of the prosecutor because of their "conscientious scruples" against capital punishment.  *See Witherspoon v. Illinois*, 391 U.S. 510, 512-23 (1968).  The Court clarified that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment" is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)).  Edwards does not claim that any of the jurors were excluded because of their opposition to capital punishment.

the trial court improperly excused Hurley and Tatum.

Edwards is not entitled to relief under § 2254(d), and his second and third claims are

**DENIED** for lack of merit.

### VII. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his fourth claim, Edwards complains that his trial counsel was ineffective for failing to

argue that the jury selection process violated his right to a jury from a fair cross section of the

community. (Pet. at 39.)

**A.  State Court Findings**

The state court on post-conviction habeas review found that Edwards did not raise this

objection at trial, and was therefore procedurally barred from raising it in the post-conviction

habeas proceedings. (State Habeas Record, "SHR", at 185.) The state court also found in the

alternative that the claim lacked merit because only the first of the three elements set out in

*Duren v. Missouri*, 439 U.S. 357, 364 (1979), had been shown. (SHR at 186.) It noted that, to

establish a prima facie violation of the fair-cross-section requirement, a defendant must show (1)

that the group alleged to be excluded is a distinctive group in the community; (2) that the

representation of this group in venires from which juries are selected is not fair and reasonable in

relation to the number of such persons in the community; and (3) that this underrepresentation is

due to systematic exclusion of the group in the jury selection process. (SHR at 186, citing

*Duren*, 439 U.S. at 364.)

The state court found that Edwards had shown that Hispanics are a distinctive group in

Dallas County as required by the first *Duren* prong. (SHR at 186.) It found no showing that the

number of Hispanics in Dallas County venires is not fair and reasonable in relation to the number

24

of Hispanics in Dallas County who are qualified for jury selection under the second prong,

however.  (SHR at 187-90.)  The state court found that Edwards relied on an incorrect method of

measuring underrepresentation of Hispanics in Dallas County venires because it measured

"discrimination in the venire selection process by showing that it excludes persons who do not

qualify for the process," and because the poll Edwards relied upon "hypothesizes why people do

not comply with their summons" for jury duty rather than show any deficiency in the process for

issuing summons in the first place.  (SHR 189 (internal citations omitted).)

Under the third *Duren* prong, the state court found that Edwards had also failed to show a

"systematic exclusion" of Hispanics.  (SHR at 190-94.)  It concluded that Edwards did not show

that a systematic defect barred Hispanics from selection for jury service or that Dallas County

applied different selection standards for Hispanics.  (SHR at 191.)  Instead, he merely suggested

that Hispanics did not respond to their jury summons in the same proportion as other groups.

(SHR at 191-92.)  The state court found that Edwards had failed to prove that "the amount of pay

or the lack of consequences for failing to report are the only reasons or even the major reasons,

why Hispanics, young adults and persons with low income do not report," but that even if he had,

this was insufficient to establish a systematic exclusion.  (SHR at 192-93.)  The state court

concluded that the "private sector influences" relied upon by Edwards did not show the kind of

action by Dallas County that is necessary to establish the violation.  (SHR at 192.)  "All people

summoned for jury duty get the same pay and suffer the same consequences or lack thereof for

non-reporting.  *Duren* is satisfied so long as the system is reasonably open to all which it is."

(SHR at 192.)

The state court concluded that Hispanics are not underrepresented on Dallas County

venires, that the selection process in Dallas County does not result in a systemic exclusion of

Hispanics, and that no violation of the fair-cross-section requirement of the Sixth Amendment

had been shown.  (SHR at 194.)  Because Edwards had not shown a valid fair-cross-section

violation, his trial counsel was not ineffective for failing to raise the claim.  (SHR at 194-95.)

## B. Merits

As set out above, claims of ineffective assistance of counsel are measured by *Strickland*'s

two-pronged standard requiring a petitioner to show both (1) that counsel's performance was

deficient and (2) that prejudice resulted from counsel's deficient performance.  *Strickland*, 466

U.S. at 687, 694.

Edwards complains that the state court unreasonably limited its comparison of the

percentage of Hispanic venirepersons to the percentage of jury-eligible Hispanics in the

community.  (Pet. at 41.)  "However, to establish the prima facie case of a denial of a fair

cross-section, the disparity between the proportion of members of an identifiable class on a jury

list must be based not on total population but, instead, on those of the identifiable class who are

eligible to serve as jurors." *United States v. Brummitt*, 665 F.2d 521, 529 (5th Cir. 1981).

Even if Edwards had shown an underrepresentation of Hispanics, however, he has still

not shown that it was the result of a systematic exclusion.  His argument that the failure to

enforce the summons combined over time constitutes a systematic exclusion of Hispanics, (Pet.

at 44-46), is not supported by clearly established federal law as determined by the Supreme

Court.  In *Berghuis v. Smith*, 130 S.Ct. 1382, 1395 (2010), the Supreme Court stated that "[n]o

'clearly established' precedent of this Court supports [the federal habeas petitioner's] claim that

he can make out a prima facie case merely by pointing to a host of factors that, individually or in

combination, might contribute to a group's underrepresentation." It reversed the Sixth Circuit's

grant of habeas relief that was based on a laundry list of factors that included low juror pay and

failure to enforce the summons, because such factors were insufficient to show a systematic

exclusion in violation of the fair-cross-section guarantee. The Supreme Court held that a state

court determination would not be "unreasonable" under § 2254(d)(1) "in concluding that *Duren*

first and foremost required [the habeas petitioner] himself to show that the underrepresentation

complained of was 'due to systematic exclusion.'" *Id.*

Similar claims based on the same evidence presented by Edwards have been rejected in

this circuit. *See e.g., Rivas v. Thaler*, 432 Fed. App'x 395, 402-403 (5th Cir.), *cert. denied*, 132

S.Ct. 850 (2011).

> As the state habeas court and the district court correctly observed, Rivas has not
> alleged any underrepresentation in the percentage of individuals in these groups
> who were called for jury service. Rather, the crux of Rivas's claim is that the
> percentage of individuals in these two groups who actually appeared for jury
> service was significantly less than the percentage of such individuals in Dallas
> County at the time. Rivas contends that low juror pay and Dallas County's lack of
> enforcement of its summonses is to blame for the disparate turnout. But the fact
> that certain groups of persons called for jury service appear in numbers unequal to
> their proportionate representation in the community does not support Rivas's
> allegation that Dallas County systematically excludes them in its jury selection
> process. Such an occurrence does not constitute the type of affirmative barrier to
> selection for jury service that is the hallmark of a Sixth Amendment violation.
> *See Taylor v. Louisiana*, 419 U.S. 522, 531, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)
> (holding unconstitutional a state statute that excluded women from jury service
> unless they had previously filed written declaration indicating their desire to
> serve).

(Emphasis in original); *see also Doyle v. Thaler*, No. 3:08-CV-138-B, 2012 WL 2376642, at

*8-*11 (N.D. Tex. June 25, 2012); *Escamilla v. Thaler*, No. 3:06-CV-2248-O, 2012 WL

1019605, at *13-*14 (N.D. Tex., Mar. 26, 2012); *Battaglia v. Stephens*, No. 3:09-CV-1904-B,

27

2013 WL 5570216 (N.D. Tex. Oct. 9, 2013).  Edwards has not shown that the state court's

determination that trial counsel was not ineffective for failing to assert this fair-cross-section

claim was incorrect, much less unreasonable or contrary to clearly established federal law.

Edwards' fourth claim is **DENIED** for lack of merit.

### VIII.  EVIDENTIARY HEARING

"In cases where an applicant for federal habeas relief is not barred from obtaining an

evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the

discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Prior to the

AEDPA, "[w]hen there is a factual dispute, [that,] if resolved in the petitioner's favor, would

entitle [him] to relief and the state has not afforded the petitioner a full and fair evidentiary

hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing."

*Goodwin v. Johnson*, 132 F.3d 162, 178 (5th Cir. 1997) *abrogated on other grounds by Smith v.*

*Robbins*, 528 U.S. 259 (2000).  In *Schriro*, the Supreme Court observed that while the basic rule

has not changed, the standards for granting relief have.

> In deciding whether to grant an evidentiary hearing, a federal court must consider
> whether such a hearing could enable an applicant to prove the petition's factual
> allegations, which, if true, would entitle the applicant to federal habeas relief.
> Because the deferential standards prescribed by § 2254 control whether to grant
> habeas relief, a federal court must take into account those standards in deciding
> whether an evidentiary hearing is appropriate.

*Schriro*, 550 U.S. at 474 (footnote omitted) (internal citations omitted).  Regarding any claim

adjudicated on the merits, the proper standard is set forth in 28 U.S.C. § 2254(d).  Federal habeas

review under § 2254(d)(1) is, "limited to the record that was before the state court," *Pinholster*,

28

131 S.Ct. at 1398, and review under § 2254 (d)(2) is limited to the "determination of the facts in light of the evidence presented in the State court proceeding."

On the allegations and record before this court, an evidentiary hearing would not enable Edwards to establish a right to federal habeas relief.  Even if facts were further developed in federal court on any of the claims presented, it would not establish a right to federal habeas relief under the AEDPA.  Accordingly, Edwards' request for an evidentiary hearing is **DENIED**.

## IX. CONCLUSION

Edwards' first, fifth and sixth claims are **DISMISSED** as procedurally barred; alternatively, they are **DENIED** for lack of merit.  Edwards' second, third and fourth claims are **DENIED** for lack of merit.  Habeas corpus relief is **DENIED**.

## X. CERTIFICATE OF APPEALABILITY

In accordance with Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c) and after considering the record in this case, the court denies the petitioner a certificate of appealability. The court finds that the petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v.  McDaniel,* 529 U.S. 473, 483-84 (2000). In the event the petitioner files a notice of appeal, he will be allowed to proceed *in forma pauperis*.

**SIGNED this 6th day of August, 2014.**

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

29